IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| Petitioner, | § § | |
| V. | § § | No. 3:17-mc-69-K-BN |
| ONCOR ELECTRIC DELIVERY CO., | § § § | |
| Respondent. | § | |

## **MEMORANDUM OPINION AND ORDER**

The Equal Employment Opportunity Commission ("EEOC") has filed an Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced. *See* Dkt. No. 1. United States District Ed Kinkeade referred this petition to the undersigned United States magistrate judge for determination under 28 U.S.C. § 636(b). *See* Dkt. No. 7. The EEOC seeks an order requiring Respondent Oncor Electric Delivery Co. to comply with Subpoena No. DA-17-03 (the "Subpoena"), requiring Oncor to produce information needed as part of the EEOC's investigation of two charges of unlawful employment practices, Charge No. 450-2015-02800 and Charge No. 450-2016-02266, which have been filed against Oncor. *See* Dkt. Nos. 1, 2, & 3.

Without the need for a show cause order, Respondent Oncor Electric Delivery Co. filed a response asserting that the EEOC cannot establish that the information sought is relevant to its investigation of the two charges at issue, and therefore cannot establish entitlement to an order requiring Oncor to comply with the overbroad

-1-

Subpoena. *See* Dkt. Nos. 4 & 5. The EEOC has filed a reply. *See* Dkt. No. 6. Neither party asserts that a hearing is necessary, and the Court finds that it is not.

For the reasons and to the extent explained below, the Court GRANTS the EEOC's Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced [Dkt. No. 1].

## Background

The EEOC's Application explains that

> 1. This is an action for enforcement of a subpoena issued pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 as amended ("ADA"), 42 U.S.C. § 12117(a), which incorporates Section 710 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-9 ("Title VII").
> 2. Jurisdiction is conferred upon the court by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates Sections 706(f)(3) and 710 of Title VII, 42 U.S.C. §§ 2000e-5(f)(3) and 2000e-9, the latter of which incorporates Section 11 of the National Labor Relations Act, 29 U.S.C. § 161.
> 3. Applicant and Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), is the federal agency charged with the administration, interpretation, and enforcement of the ADA, including the investigation of charges of unlawful employment practices, and isauthorized to bring this action pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates Section 710 of Title VII, 42 U.S.C. § 2000e-9.
> 4. The Respondent is an employer doing business in the State of Texas with a facility in Dallas, Texas.
> 5. On March 15, 2017, pursuant to its authority under 29 U.S.C. § 161 (incorporated in Section 710 of Title VII, 42 U.S.C. § 2000e-9, which, in turn, is incorporated in Section 107(a) of the ADA, 42 U.S.C. § 12117(a)), the EEOC issued to the Respondent Subpoena No. DA-17-03, which was duly served on the Respondent by the EEOC's Dallas District Office.
> 6. Subpoena No. DA-17-03 required the Respondent to produce information needed as part of the EEOC's investigation of two charges of unlawful employment practices, Charge No. 450-2015-02800 and Charge No. 450-2016-02266, which have been filed against the Respondent.

> 7. The Respondent filed a petition to revoke the Subpoena by letter dated March 29, 2017.
> 8. On June 20, 2017, the EEOC issued its Determination, denying Respondent's Petition to Revoke, but modifying Request No. 3 in the EEOC's subpoena.
> 9. Upon receipt of the Determination, the Respondent continues to refuse to comply with the Subpoena No. DA-17-03, even in its modified form.
> 10. Respondent's failure to comply with the Subpoena has delayed and hampered the EEOC's investigation.

Dkt. No. 1 at 1-2. The EEOC explains, in short, that it

> is currently investigating a charge of discrimination filed against Oncor Electric Delivery Co. ("Company" or "Respondent") under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. Sec. 12101-17 ("ADA"). In the course of its investigation, the EEOC issued a subpoena seeking documents relating to that investigation. The Respondent has refused to produce requested documents, and that refusal has delayed and hampered the investigation of the charge. The EEOC therefore applies to this Court to issue an Order to Show Cause why the Subpoena should not be enforced.

Dkt. No. 3 at 1.

As background, the EEOC further explains that

> Delores McCraney worked for Respondent in a desk job at Respondent's Dallas office. In her role as Hold Queue Representative, she typed service orders. Upon returning from a medical leave due to treatment of carpal tunnel surgery, the Company required Ms. McCraney to sign a "Return to Work Memorandum." The Memorandum, required that she agree to inform her supervisor, or the management official above her supervisor if her supervisor was unavailable, all medications, both prescription and non-prescription, "that could affect your ability to safely perform your essential job functions and possible side effects that could affect your job performance." She was further required to "keep us updated on any changes."
> When Delores McCraney refused to sign the Memorandum, the Company forced her back onto a leave of absence – without pay. When Ms. McCraney came to the EEOC, she specifically told the EEOC, in her intake questionnaire, that she objected to revealing her medications to the employer. (excerpt from Intake Questionnaire, Exhibit 1). Respondent has admitted to the EEOC in its official Position Statement that, when it asked that Ms. McCraney specify the

provisions of the Memorandum she found objectionable, she stated that she "disagreed with the whole document…" (excerpt from Respondent's Position Statement dated April 16, 2016). The EEOC reviewed the document that Respondent required Ms. McCraney to sign. In addition, the EEOC reviewed the Respondent's written mandatory medication disclosure policy ("the Policy"). Both reveal a broad-based, company-wide policy regarding mandatory employee disclosure of medications. There is no dispute that the Policy is enforced company-wide. An email sent to the Charging Party by Respondent's Employee Relations Department confirms that the medication disclosure required of Ms. McCraney applies to all employees of Respondent:

> In general, the Return to Work memo is used with employees upon their return from a medical leave of absence so that management's expectations are clear. You are not being singled out. Provisions 2, 3, 4, and 6 address expectations that apply to every [O]ncor employee:…they must report to their supervisor medications that could affect their ability to perform their job…

(email from Valerie Lewis to Dolores McCraney, 10:42 A.M., 9/16/15

It is the EEOC's position that the Policy, on its face, is contrary to the ADA's prohibition against medical inquiries of current employees under 42 U.S.C. Sec. 12112(d)(4)(A) (1994), ADA regulations at 29 C.F.R. Sec. 1630.14(c)(1998) and the EEOC's Enforcement Guidance: Disability-related Inquiries and Medical Examinations of Employees Under the ADA, No. 915.002 (July 27, 2000). Suffice to say, nearly every medication, prescription and non-prescription, has potential side effects that could affect the taker of the medication. Ibuprofen, according to the manufacturer of Advil, could cause asthma, shock, heart attack, heart failure and stroke, each of which could affect an employee's job performance. Medical inquiries of this type are prohibited under the ADA because they can tend to elicit information about a disability. Employees across the country are taking medication for hidden disabilities – bipolar disorder, depression, schizophrenia, HIV, hepatitis, epilepsy – many of which, based on the labels, could impact the employee's ability to perform the job. But employers are prohibited from making such medical inquiries, unless and until, the employee manifests a behavior or a symptom that puts the employer on notice that such a personal, medical inquiry is justifiable as a business necessity. Under EEOC Guidance, such blanket inquiries, where there is no evidence of work performance issues, are rarely justified as a business necessity. Ms. McCraney's clerical job does not fall within any exception to ADA protections against intrusive medical inquiries.

Upon learning of Respondent's broad-based medication disclosure policy through the normal course of it investigation, the EEOC, as part

of its historic mandate to achieve classwide relief in instances of potentially widespread discrimination, sought identifying information as to employees who suffered discipline or discharge because of Respondent's medical inquiry policy. On March 15, 2017, after repeated attempts to obtain information by means of informal requests for information, the Acting Director of the Dallas District Office issued and served upon Respondent a subpoena for the following information:

    1. Provide a document listing the following for each employee who has been disciplined and/or discharged pursuant to Respondent's prescription medication disclosure policy between February 1, 2015 to the present: name, last known address and telephone number, dates of employment, job title, department, supervisor's name and job title.

    2. For each employee identified in Request #1, above, provide the employee's written disciplinary record, and, if no longer employed, provide his/her resignation and/or termination document.

    3. For each employee identified in Request #1, above, provide his/her medical file.

(Dir. Decl., Attachment 11). The subpoena directed the Respondent to produce the documents by April 6, 2017. In response, Respondent served on the EEOC a letter petitioning to revoke the subpoena. Respondent's petition asserted that the subpoena 1) seeks information that is not relevant, and 2) will not be produced because of employee privacy interests (Dir. Decl., Attachment 12).1 Pursuant to agency procedures, upon review, the Commission issued a Determination on the Petition to Revoke Subpoena (Dir. Decl., Attachment 13). In its Determination, the Commission modified the third request in the subpoena, limiting this request to only require the Respondent to identify the medications that were the subject of the discipline or discharge; and to identify the underlying medical condition(s) of the employee for which the medication was being taken, if known by Respondent, rather than the complete employee medical files. Upon receipt of the Determination, and its modified request, Respondent informed the EEOC that it continued to refuse to comply with the subpoena. (Dir. Decl., Attachment 14).

Dkt. No. 3 at 1-5 (emphasis removed).

Oncor asserts that "the charges being investigated are an alleged failure to accommodate the charging party's ('McCraney's') disability and alleged retaliation against McCraney, and the information sought relates to how a company drug disclosure policy might have affected other unknown employees. Oncor contends

-5-

EEOC's Subpoena is purely a fishing expedition to see if something may be discovered relating to potential future charges, and therefore should not be enforced." Dkt. No. 5 at 2.

**Legal Standards and Analysis**

The United States Supreme Court recently summarized the statutory background of an application by the EEOC to enforce a subpoena:

> Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." § 703(a), 78 Stat. 255, 42 U.S.C. § 2000e-2(a). The statute entrusts the enforcement of that prohibition to the EEOC. *See* § 2000e-5(a); *EEOC v. Shell Oil Co.*, 466 U.S. 54, 61-62, 104 S. Ct. 1621, 80 L. Ed. 2d 41 (1984). The EEOC's responsibilities "are triggered by the filing of a specific sworn charge of discrimination," *University of Pa. v. EEOC*, 493 U.S. 182, 190, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990), which can be filed either by the person alleging discrimination or by the EEOC itself, see § 2000e-5(b). When it receives a charge, the EEOC must first notify the employer, *ibid.*, and must then investigate "to determine whether there is reasonable cause to believe that the charge is true," *University of Pa.*, 493 U.S., at 190, 110 S. Ct. 577 (internal quotation marks omitted).
> This case is about one of the tools the EEOC has at its disposal in conducting its investigation: a subpoena. In order "[t]o enable the [EEOC] to make informed decisions at each stage of the enforcement process," Title VII "confers a broad right of access to relevant evidence." *Id.*, at 191, 110 S. Ct. 577. It provides that the EEOC "shall ... have access to, for the purposes of examination, ... any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by" Title VII and "is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). And the statute enables the EEOC to obtain that evidence by "authoriz[ing] [it] to issue a subpoena and to seek an order enforcing [the subpoena]." *University of Pa.*, 493 U.S., at 191, 110 S. Ct. 577; see § 2000e-9. Under that authority, the EEOC may issue "subp[o]enas requiring the attendance and testimony of witnesses or the production of any evidence." 29 U.S.C. § 161(1). An employer may petition the EEOC to revoke the subpoena, *see ibid.*, but if the EEOC rejects the petition and the employer still "refuse[s] to obey [the] subp[o]ena," the EEOC may ask a district court to issue an order enforcing it, *see* § 161(2).
> A district court's role in an EEOC subpoena enforcement

proceeding, we have twice explained, is a straightforward one. *See University of Pa.*, 493 U.S., at 191, 110 S. Ct. 577; *Shell Oil*, 466 U.S., at 72, n.26, 104 S. Ct. 1621. A district court is not to use an enforcement proceeding as an opportunity to test the strength of the underlying complaint. *Ibid.* Rather, a district court should "'satisfy itself that the charge is valid and that the material requested is "relevant" to the charge.'" *University of Pa.*, 493 U.S., at 191, 110 S. Ct. 577. It should do so cognizant of the "generou[s]" construction that courts have given the term "relevant." *Shell Oil*, 466 U.S., at 68-69, 104 S. Ct. 1621 ("virtually any material that might cast light on the allegations against the employer"). If the charge is proper and the material requested is relevant, the district court should enforce the subpoena unless the employer establishes that the subpoena is "too indefinite," has been issued for an "illegitimate purpose," or is unduly burdensome. *Id.*, at 72, n.26, 104 S. Ct. 1621. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652-653, 70 S. Ct. 357, 94 L. Ed. 401 (1950) ("The gist of the protection is in the requirement ... that the disclosure sought shall not be unreasonable" (internal quotation marks omitted)).

*McLane Co., Inc. v. E.E.O.C.*, 137 S. Ct. 1159, 1164-65 (2017) (footnote omitted).

As the EEOC correctly notes, "[t]here is no dispute that the charge in this case is proper. Respondent has not asserted that the subpoena is indefinite in its terms, has been issued for some kind of illegitimate purpose, and the Respondent, a multi-million dollar corporation, has not asserted that compliance would be unduly burdensome. Valid charges have been filed in this case, and the subpoena contains all the information required by EEOC regulations." Dkt. No. 3 at 7 (footnote and internal quotation marks omitted).

Rather, Oncor notes that, "[t]o succeed in its effort before this Court to enforce its Administrative Subpoena, the EEOC has the burden to establish that: (1) the Subpoena is within the Agency's authority; (2) the demand is not too indefinite; and (3) the information sought is relevant to the investigation." Dkt. No.5 at 1. And Oncor

explains that it "challenges the third element – relevance." *Id.* Oncor asserts that "the EEOC may not use a pending investigation of a particular charge to seek information that may be relevant to a potential future charge" but rather "must have a realistic expectation rather than an idle hope that something may be discovered" and that, "[i]f the EEOC fails to meet its burden to demonstrate relevance, the Court cannot enforce the Subpoena." *Id.* at 2 (internal quotation marks omitted).

The Supreme Court has explained that "[t]he decision whether evidence sought is relevant requires the district court to evaluate the relationship between the particular materials sought and the particular matter under investigation" and that "[a] district court deciding whether evidence is 'relevant' under Title VII need not defer to the EEOC's decision on that score; it must simply answer the question cognizant of the agency's broad authority to seek and obtain evidence." *McLane*, 137 S. Ct. At 1167, 1169. The Supreme Court recently noted "the established rule that the term 'relevant' be understood 'generously' to permit the EEOC 'access to virtually any material that might cast light on the allegations against the employer.'" *Id.* at 1169 (quoting *Shell Oil*, 466 U.S. at 68-69).

The EEOC contends that, "[c]ontrary to Respondent's position, insisting that the EEOC investigation be constrained to the specific wording of Ms. McCraney's charge, courts have held that the EEOC is not limited to investigating only the specific allegations stated in the charge." Dkt. No. 3 at 9. After full briefing, the issue here appears to boil down to whether Oncor correctly asserts that Ms. McCraney's charges before the EEOC have nothing to do with to Oncor's drug disclosure policy because Ms.

McCraney was not terminated or disciplined for any reason having to do with the drug disclosure policy.

The Court is persuaded that the EEOC has the better of this argument and has shown that the materials requested are "relevant to the charge." As the EEOC explains in its reply,

> [a]ccording to Respondent's timeline, Ms. McCraney requested the accommodation of Dragon software while on leave for her disability on May 29, 2015. It took Respondent until August 25, 2015, to determine if her request could be granted and to schedule training for her to learn the software. She finally was able to return to work to learn the software, as scheduled, on August 25, 2015. However, it was on that day that she was presented with Oncor's Return-to-Work Memorandum. She refused to sign this agreement. She was sent back home. When she continued to refuse to sign the Return-To-Work Memorandum, she was terminated on March 26, 2016. Had she not refused to sign the agreement required by Respondent, she would be an employee of Respondent today.

Dkt. No. 6 at 6. The EEOC explains that Oncor "placed Ms. McCraney on unpaid leave when and because she refused to agree to adhere to this policy. There were other aspects to the Memorandum that she objected to, surely. In fact, she made it clear, and Respondent has admitted, that she objected to the agreement in its entirety." *Id.* at 3. On these facts, "the EEOC viewed and continues to view Delores McCraney as a victim of Respondent's invasive medicine disclosure policy," and, "[g]iven these facts, seeking relief for others – in addition to Ms. McCraney, of course – is simply inherent in the mission of this federal law enforcement agency." *Id.* at 3, 4.

The Court is not persuaded that, as Oncor asserts, "[t]he requested information is not relevant to the specific Charges that McCraney has made against Oncor" or that "McCraney was not disciplined or discharged pursuant to this policy" and has not

"alleged that she was harmed in any way by the policy, or that the policy itself is discriminatory on its face." Dkt. No. 5 at 9. Although Oncor insists that "[i]nformation about other employees who may have been disciplined and/or discharged pursuant to the policy is thus completely irrelevant to the current Charges under investigation" and that "[t]he information requested in the Subpoena could only have relevance to a possible future hypothetical charge," *id.*, the Court determines, consistent with the authorities that the EEOC cites in its briefing, that the information that the Subpoena seeks relates to unlawful employment practices covered by Title VII and is relevant to the charges under investigation, as 42 U.S.C. § 2000e-8(a) requires.

And, as the EEOC explains, here, the EEOC credibly asserts that Oncor's "'objectionable' policy directly impacted" Ms. McCraney where, "[b]ecause she refused to agree to the policy, she was forced onto unpaid long term disability leave"; where, "[u]nder Respondent's rules, an employee is automatically terminated when he or she goes on LTD"; and where, "[i]n this case, Respondent delayed her termination until March 2016 while it continued to try to get her to sign the Memorandum." Dkt. No. 6 at 5. The EEOC contends that "[s]uch stark proof of cause and effect is not even necessary for the EEOC to investigate potential other individuals affected by an unlawful employment practice uncovered during the course of an investigation. But, in fact, here there was just such a direct impact on Delores McCraney." *Id.*

Oncor nevertheless argues that, here, "there is no pending investigation regarding employees beyond McCraney"; that "[t]he EEOC cannot enforce a subpoena in the investigation of McCraney's charge as a convenient bypass of the process

required to file a new charge"; that "[t]he EEOC has not explained how information on other employees who may have been discharged or disciplined under the policy will help to resolve the contested issues in McCraney's Charges"; and that "[t]he information is not relevant to these Charges and the EEOC is not entitled to it." Dkt. No. 5 at 13.

The EEOC – after explaining that "[d]etermining whether there are others 'similarly situated' to the Charging Party is vital to the mandate of the EEOC" and that it "typically issues this request for information every time it uncovers an unlawful employment practice" – replies that "an investigation of the scope and effect of the general policy bearing on Ms. McCraney's situation is relevant to her charge." Dkt. No. 6 at 3, 7. In light of the generous construction that courts give the term "relevant" in this context, the Court determines that is enough to bring the subpoenaed information within the scope of material that might cast light on the allegations against Oncor.

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS the Equal Employment Opportunity Commission's Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced [Dkt. No. 1] and ORDERS that EEOC Subpoena DA-17-03 should be enforced and that Respondent Oncor Electric Delivery Co. must serve on the Equal Employment Opportunity Commission all information set forth in the Subpoena, as previously modified, by **December 20, 2017**.

SO ORDERED.

DATED: November 16, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE